1  SHANNON L. ERNSTER  (SBN:  264940)
   sernster@grsm.com
2  HELA VAKNIN  (SBN:  342083)
   hvaknin@grsm.com
3  GORDON REES SCULLY MANSUKHANI, LLP
   633 West Fifth Street, 52nd Floor
4  Los Angeles, CA 90071
   Telephone:  (213) 576-5000
5  Facsimile:  (213) 680-4470

6  Attorneys for Defendant
   NATIONAL RAILROAD PASSENGER
7  CORPORATION d/b/a AMTRAK

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11  KEITH FEDER, M.D., INC.,              )  CASE NO. 2:25-cv11968
                                          )  *Judge:*
12                        Plaintiff,       )
                                          )  *Los Angeles County Superior Court*
13        vs.                              )  *Case No. 25STCV32736*
                                          )
14  AMTRAK COMPANY, and DOES              )
    1-10,                                 )  **DECLARATION OF SHANNON**
15                                         )  **L. ERNSTER IN SUPPORT OF**
                                          )  **DEFENDANT'S NOTICE OF**
16                        Defendants.      )  **REMOVAL**
                                          )
17                                         )  State Court Complaint Filed:
                                          )  November 10, 2025
18                                         )
                                          )
19                                         )  Accompanying Document:
                                          )  Notice of Removal;
20                                         )  Declaration of Heather S. Gelfuso
                                          )
21                                         )
                                          )
22                                         )
                                          )
23                                         )
                                          )
24                                         )

25

26

27

28

DECLARATION OF SHANNON L. ERNSTER IN SUPPORT OF
DEFENDANT'S NOTICE OF REMOVAL

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1

## <u>DECLARATION OF SHANNON L. ERNSTER</u>

2      I, Shannon L. Ernster, declare as follows:

3      1.      I am an attorney duly licensed to practice law before all courts of the

4  State of California and the United States District Court for the Central District of

5  California, and am a partner at Gordon Rees Scully Mansukhani, LLP, attorneys

6  for Defendant National Railroad Passenger Corporation d/b/a Amtrak ("Amtrak")

7  in this matter.  I am a member in good standing with the State Bar of California.  I

8  have personal knowledge of the following facts, except for those based on

9  information and belief, which I believe to be true, and if called upon to testify, I

10  could and would competently testify to their truth and accuracy.

11      2.      This declaration is submitted in support of Amtrak's Notice of

12  Removal under 28 U.S.C. §§ 1331, 1332, 1349, 1441, and 1446.

13      3.      Plaintiff Keith Feder, M.D., Inc. ("Plaintiff") filed the instant action

14  against Amtrak in the Superior Court of the State of California for the County of

15  Los Angeles, entitled Keith Feder, M.D., Inc. v. Amtrak Company, Case No.

16  25STCV32736.  A true and correct copy of the Summons and Complaint is

17  attached hereto as **Exhibit A**.

18      4.      **Exhibit A** is the complete copy of all of the documents Plaintiff

19  served on Amtrak on November 19, 2025.

20      I declare under penalty of perjury under the laws of the United States of

21  America that the foregoing is true and correct, and if called as a witness I could

22  and would so testify.

23      Executed this 18th day of December, 2025, in Nashville, Tennessee.

24

25                                    /s/ *Shannon L. Ernster*
                                      Shannon L. Ernster

26

27

28

**Gordon Rees Scully Mansukhani, LLP**
**633 West Fifth Street, 52nd Floor**
**Los Angeles, CA 90071**

-2-
DECLARATION OF SHANNON L. ERNSTER IN SUPPORT OF
DEFENDANT'S NOTICE OF REMOVAL

# EXHIBIT A

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Amtrak Company and DOES 1-10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Keith Feder, M.D., Inc.

Electronically FILED by
Superior Court of California,
County of Los Angeles
11/10/2025 1:19 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By E. Galicia, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Stanley Mosk Courthouse
111 N. Hill St.
Los Angeles, CA 90012

CASE NUMBER:
*(Número del Caso):*
**25STCV32736**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jonathan Stieglitz, 11845 W. Olympic Blvd., Suite 800, Los Angeles, California 90064, (323) 979-2063
David W. Slayton, Executive Officer/Clerk of Court

| DATE: 11/10/2025 | Clerk, by | , Deputy |
|---|---|---|
| *(Fecha)* | *(Secretario)* E. Galicia | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* AMTRAK Company

under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☒ other *(specify):* unknown entity
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

1  JONATHAN A. STIEGLITZ
   (SBN 278028)
2  jonathan.a.stieglitz@gmail.com
   THE LAW OFFICES OF
3  JONATHAN A. STIEGLITZ
   11845 W. Olympic Blvd., Ste. 800
4  Los Angeles, California 90064
   Telephone:  (323) 979-2063
5  Facsimile:  (323) 488-6748

6  Attorney for Plaintiff
   Keith Feder, M.D., Inc.
7

Electronically FILED by
Superior Court of California,
County of Los Angeles
11/10/2025 1:19 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By E. Galicia, Deputy Clerk

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF LOS ANGELES

10 Keith Feder, M.D., Inc.              Case No.: 25STCV32736

11          Plaintiff,                  Complaint For:

12     v.                               1.  NEGLIGENT
                                            MISREPRESENTATION; AND
13 Amtrak Company and DOES 1-10,        2.  PROMISSORY ESTOPPEL

14          Defendant.                  Or in the alternative-

15                                      3.  RECOVERY OF BENEFITS
                                            UNDER 29 U.S.C. §1132 (a)(1)(B)
16
                                        **(Jury Trial Requested)**
17
                                        Damages - $238,432.44
18

19

20

21

22

23

24

25

26

27

28

                                   Complaint

1   Plaintiff Keith Feder, M.D., Inc. (hereinafter referred to as "PLAINTIFF" or
2   "Medical Provider") complains and alleges:

3                                    **PARTIES**

4   1.   Plaintiff, is and at all relevant times was a medical corporation,
5   organized and existing under the laws of the State of California. Plaintiff is and at
6   all relevant times was in good standing under the laws of the State of California.

7   2.   Defendant Amtrak Company ("Defendant") is and was licensed to do
8   business in and is and was doing business in the State of California. PLAINTIFF is
9   informed and believes that Defendant is licensed to transact business in the State of
10  California. Defendant is, in fact, transacting business in the State of California and
11  is thereby subject to the laws and regulations of the State of California.

12  3.   Based on information provided by Defendant, Plaintiff understands
13  that Aetna Life Insurance Co. ("Aetna") is and was Defendant's agent and
14  representative in connection with stating the manner of payment for medical
15  services and providing other administrative services relating to the Patient's and
16  Defendant's health plan.

17  4.   The true names and capacities, whether individual, corporate,
18  associate, or otherwise, of defendants DOES 1 through 10, inclusive, are unknown
19  to PLAINTIFF, who therefore sues said defendants by such fictitious names.
20  PLAINTIFF is informed and believes and thereon alleges that each of the
21  defendants designated herein as a DOE is legally responsible in some manner for
22  the events and happenings referred to herein and legally caused injury and damages
23  proximately thereby to PLAINTIFF. PLAINTIFF will seek leave of this Court to
24  amend this Complaint to insert their true names and capacities in place and instead
25  of the fictitious names when they become known to it.

26  5.   At all times herein mentioned, unless otherwise indicated,
27  DEFENDANT/s were the agents and/or employees of each of the remaining
28  defendants and were at all times acting within the purpose and scope of said agency

                                      - 2 -

1   and employment, and each defendant has ratified and approved the acts of his

2   agent. At all times herein mentioned, DEFENDANT/s had actual or ostensible

3   authority to act on each other's behalf in certifying or authorizing the provision of

4   services; processing and administering the claims and appeals; pricing the claims;

5   approving or denying the claims; directing each other as to whether and/or how to

6   pay claims; issuing remittance advices and explanations of benefits statements;

7   making payments to Medical Provider and its Patients.

8   **GENERAL ALLEGATIONS**

9       6.    This complaint arises out of the failure of DEFENDANT to make

10  proper payments and/or the underpayment to Medical Provider by DEFENDANT

11  and DOES 1 through 10, inclusive, of amounts due and owing now to Medical

12  Provider for surgical care, treatment and procedures provided to Patients, who are

13  insureds, members, policyholders, certificate-holders or were otherwise covered for

14  health, hospitalization and major medical insurance through policies or certificates

15  of insurance issued and underwritten by DEFENDANT and DOES 1 through 10,

16  inclusive.

17      7.    Medical Provider is informed and believes based on Aetna's oral and

18  other representations, made on behalf of Defendant, that the Patient was an insured

19  of DEFENDANT either as a subscriber to coverage or a dependent of a subscriber

20  to coverage under a policy or certificate of insurance issued and underwritten by

21  DEFENDANT and DOES 1 through 10, inclusive, and each of them. Medical

22  Provider is informed and believes that the Patient entered into a valid insurance

23  agreement with DEFENDANT for the specific purpose of ensuring that the Patient

24  would have access to medically necessary treatments, care, procedures, and

25  surgeries by medical practitioners like Medical Provider and ensuring that

26  DEFENDANT would pay for the health care expenses incurred by the Patient.

27      8.    It is standard practice in the health care industry that when a medical

28  provider enters into a written preferred provider contract with a health plan such as

1    DEFENDANT, that a medical provider agrees to accept reimbursement that is
2    discounted from the medical provider's total billed charges in exchange for the
3    benefits of being a preferred or contracted provider.

4         9.    Those benefits include an increased volume of business because the
5    health plan provides financial and other incentives to its members to receive their
6    medical care and treatments from the contracted provider, such as advertising that
7    the provider is "in network" and allowing the members to pay lower co-payments
8    and deductibles to obtain care and treatment from a contracted provider.

9         10.   Conversely, when a medical provider, such as Medical Provider, does
10   not have a written contract or preferred provider agreement with a health plan, the
11   medical provider receives no referrals from the health plan.

12        11.   The medical provider has no obligation to reduce its charges. The
13   health plan is not entitled to a discount from the medical provider's total bill charge
14   for the services rendered, because it is not providing the medical provider within
15   network medical provider benefits, such as increased patient volume and direct
16   payment obligations.

17        12.   The reason why medical providers have chosen to forgo the benefits of
18   a contract with a payor is that, in recent years, many insurers or network holders
19   such as Defendant's representative Aetna have contracted rates for in-network
20   providers that are so meager, one-sided, and onerous, that many providers like
21   Medical Provider have determined that they cannot afford to enter into such
22   contracts. As a result, a growing number of medical providers have become non-
23   contracted or out of network providers.

24        13.   Payors and insurers still want their patients to be seen and so they
25   commonly promise to pay out of network providers a percentage of the market rate
26   for the procedure, also described as, an average payment for the procedure
27   performed or provided by similarly situated medical providers within similarly
28   situated areas or places of practice. Rather than use the words market rate to

- 4 -
COMPLAINT

1  simplify terms, payors have long used words or combinations of words such as
2  usual, reasonable, customary, and allowed all to mean an average payment for a
3  procedure provided by similarly situated medical providers within similarly situated
4  areas or places of practice ("UCR").

5      14.    The United States government provides a definition for the term UCR.
6  "The amount paid for a medical service in a geographic area based on what
7  providers in the area usually charge for the same or similar medical service. The
8  UCR amount sometimes is used to determine the allowed amount."[1]

9      15.    Based upon these criteria, Medical Provider's charges are usual,
10 customary, and reasonable. Medical Provider charged DEFENDANT the same fees
11 that it charges all other payors. Medical Provider's fees are comparable to the
12 prevailing provider rates in the geographic areas to the one in which the services
13 were provided.

14     16.    DEFENDANT and Aetna use the term UCR in their policies.

15     17.    When DEFENDANT or Aetna on Defendant's behalf uses the term
16 UCR for the price of a medical service, DEFEDANT and/or Aetna will utilize a
17 medical bill database from Fair Health Inc. or the like to determine the exact dollar
18 amount to be paid for a medical claim.[2]

19
20

---

21 [1] *See* Healthcare.gov, UCR (Usual, Customary and Reasonable) (August 1,
   2022), https://www.healthcare.gov/glossary/UCR-usual-customary-and-reasonable/
22 (defining UCR)

23 [2] United Healthcare, Information on Payment of Out-of-Network Benefits
   (October 3, 2021), https://www.uhc.com/legal/information-on-payment-of-out-of-
24 network-benefits ("FH, [Fair Health], Benchmarking Database. One of two
   compilations of information on health care professional charges created by Fair
25 Health and used by affiliates of UnitedHealth Group **to determine payment** for
   out-of-network professional services when reimbursed under standards such as 'the
26 reasonable and customary amount,' 'the usual, reasonable and customary amount,'
   'the prevailing rate,' or other similar terms that base payment on what other
27 healthcare professionals in a geographic area charge for their services."

28

18. Fair Health Inc. is a database which is available to the public. It is available for purchase when utilized by entities like DEFENDANT or Aetna and it is available for free in a more limited fashion for use by consumers.[3]

19. When a medical provider like PLAINTIFF is told that DEFENDANT or Aetna will be paying a claim based on UCR, PLAINTIFF expects that DEFENDANT or Aetna will be utilizing the Fair Health database to calculate the exact dollar amount that will be paid.

20. In the alternative and separately, Medical Provider is owed proper reimbursement in accordance with the Patient's health plan. *See Marin Gen. Hosp. v. Modesto & Empire Traction Co.,* 581 F.3d 941, 949 (9th Cir. 2009).

21. Medical Provider is informed based solely on DEFENDANT's representations that Patient's health plan at issue in this litigation is a health plan governed by the Employee Retirement Income Securities Act of 1974 ("ERISA"). Based on DEFENDANTS' representations, Medical Provider asserts that Patient's health plan is an ERISA health plan ("ERISA Plan").

22. Prior to services being rendered, Medical Provider obtained an assignment from each Patient granting Medical Provider the right to step into the shoes of each Patient with respect to Patient's rights under Patient's ERISA Plan, including but not limited to the right to seek proper reimbursement for medical services as well as to seek legal redress for DEFENDANT's failure to properly administer the terms of the ERISA Plan.

23. For Patient's claim, DEFENDANT has waived or is estopped from asserting an anti-assignment provision were one even to exist. *See Beverly Oaks*

_____
[3] *See* fairhealthconsumer.org, (August 1, 2022), https://www. fairhealthconsumer.org/medical/results (assisting consumers to calculate the amount to be paid for a particular medical procedure)

1 | *Physicians Surgical Ctr., Ltd. Liab. Co. v. Blue Cross & Blue Shield of Ill.*, 983
2 | F.3d 435, 437 (9th Cir. 2020).

3 |     24.    For the claim at issue in this suit, Medical Provider has spent
4 | significant time and money in jumping through the necessary hoops in exhausting
5 | its administrative remedies under ERISA.

6 |     25.    Medical Provider sent out multiple appeal letters to DEFENDANT and
7 | any further appeals would be futile as Medical Provider has received letters stating
8 | that DEFENDANT's decision is final.

9 |     26.    In either case, Medical Provider has a reputation for providing high
10 | quality care and, as a result, Plaintiff brings this suit to obtain appropriate
11 | compensation for Medical Provider's services.

12 | **SPECIFIC FACTS**
13 | **PATIENT RS**

14 |     27.    On December 22, 2022 – December 30, 2022, January 04, 2023 –
15 | December 29, 2023, and January 24, 2024 – December 31, 2024, Patient received
16 | medical services from Medical Provider.

17 |     28.    Before December 22, 2022, so as to determine whether or not to
18 | provide services, Medical Provider's employee, JC., obtained representations from
19 | Aetna and DEFENDANT's representative, regarding the manner in which Medical
20 | Provider would be paid for services.

21 |     29.    Medical Provider provided Aetna on behalf of Defendant Medical
22 | Provider's name, address, and tax identification number. Medical Provider also
23 | represented that it was calling on behalf of an ambulatory surgery center.

24 |     30.    Medical Provider asked: what is the Patient's responsibility versus
25 | Defendant's responsibility for paying for medical services?

26 |     31.    Aetna on behalf of Defendant represented to Medical Provider that
27 | Patient's deductible is and was $200.00 and Patient's Max Out Of Pocket

28 |

1 ("MOOP") expense is and was $2,000.00 and that to date for that calendar year
2 Patient had paid $367.00.

3  32. Medical Provider asked: does Defendant pay based on UCR?

4  33. Aetna on behalf of Defendant represented to Medical Provider that for
5 services, Defendant pays the UCR rate.

6  34. Medical Provider asked: does Defendant use a Medicare Fee
7 Schedule?

8  35. Aetna on behalf of Defendant represented to Medical Provider that for
9 services, Defendant's payment would not be based on the Medicare Fee Schedule.

10  36. Defendant also represented that no preauthorization or precertification
11 was required.

12  37. All of the information obtained was documented by MEDICAL
13 PROVIDER as part of MEDICAL PROVIDER's office policy and practice.

14  38. At no time prior to the provision of services to Patient by MEDICAL
15 PROVIDER was MEDICAL PROVIDER advised that Patient's policy or
16 certificate of insurance was subject to certain exclusions, limitations, or
17 qualifications, which might result in denial of coverage, limitation of payment or
18 any other method of payment unrelated to the UCR rate.

19  39. Aetna on behalf of DEFENDANT did not make reference to any other
20 portion of Patient's plan that would put MEDICAL PROVIDER on notice of any
21 reduction in the originally stated payment percentage.

22  40. Despite having Aetna make these representations on its behalf,
23 DEFENDANT and Aetna knew that they would not be paying Medical Provider at
24 the UCR rate.

25  41. Despite having Aetna make these representations on its behalf,
26 DEFENDANT and Aetna knew that they would be paying Medical Provider at a
27 Medicare rate.

28

42.   Aetna on behalf of Defendant intended by its representations to induce Medical Provider to provide the medical services.

43.   MEDICAL PROVIDER was never provided with a copy of Patient's plan or even a portion of Patient's plan by DEFENDANT or Patient. As a result, MEDICAL PROVIDER could not even make itself aware of any reduction of the payment amount.

44.   Medical Provider relied and provided services solely based on Aetna's representations, promises and statements on behalf of DEFENDANT. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to provide medical services. Medical Provider took Aetna's representations on behalf of DEFENDANT at face value and provided services based solely on those promises and representations.

45.   In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B) DEFENDANT has failed to reimburse Patient and now Medical Provider in accordance with the terms of Patient's ERISA Plan.

46.   Patient's health plan provides for coverage for orthopedic procedures like the ones provided to Patient. There is no exclusion for the services provided to Patient.

47.   As the services were covered, according to the health plan, DEFENDANT was obligated to pay Medical Provider's what the health plan describes as the "Reasonable amount rate".

48.   The "Reasonable amount rate" is defined as the "90th percentile value reported in a database prepared by Fair Health, a nonprofit company."

49.   Defendant's payment was based on a percentage of Medicare and was not based on Fair Health.

50.    Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to Medical Provider.

51.    Following the medical procedure, Medical Provider submitted a bill to DEFENDANT which stated that Medical Provider had received an assignment from the Patient.

52.    At no point in time did DEFENDANT or Aetna on behalf of Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

53.    Over the next couple of months, Medical Provider sent numerous appeal letters to DEFENDANT through Aetna in accordance with ERISA to exhaust all of Patient's and now Medical Provider's administrative remedies.

54.    In the alternative, Medical Provider alleges that Defendant and Aetna completely frustrated Medical Provider's ability to appeal and exhaust the claim and Defendant and Aetna's denials simply requested documents that had already been produced.

55.    Medical Provider even sent Aetna on behalf of Defendant a copy of the assignment between the Patient and Medical Provider. The assignment specifically stated that if the health plan has an anti-assignment, Aetna on behalf of Defendant should let Medical Provider know. Therefore, in the event, Medical Provider was not made aware of an anti-assignment, Medical Provider would proceed to obtain payment based on the assignment with the understanding that the health plan did not have an anti-assignment.

56.    In fact, Medical Provider was never informed during the appeal process that Patient's plan had an anti-assignment provision, and that DEFENDANT would only speak with the Patient.

57.    DEFENDANT has made clear that Medical Provider has no further administrative remedies or has simply frustrated Medical Provider's ability to utilize those remedies.

- 10 -

1      58.     In all cases DEFENDANT refused to make any additional payment.

2      59.     The total bill was $280,325.00. Defendant paid $41,982.56 which is

3   less than 5% of the billed amount and does not result in a "reasonable profit" for

4   Medical Provider.

5      60.     Under either scenario, following the procedure, Medical Provider

6   submitted to DEFENDANT through Aetna any and all billing information required

7   by DEFENDANT and Aetna, including a bill for $280,325.00.

8      61.     Following the procedure, MEDICAL PROVIDER submitted its claims

9   to DEFENDANT through Aetna accompanied with lengthy operative reports, chart

10  notes, and other medical records. No matter whether large or small, all of

11  MEDICAL PROVIDER's claims were submitted to DEFENDANT using CPT

12  codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers,

13  as necessary. MEDICAL PROVIDER submitted to DEFENDANT through Aetna

14  any and all billing information and any and all additional information requested by

15  DEFENDANT.

16     62.     DEFENDANTS processed the bill and sent an EOB directed to

17  MEDICAL PROVIDER, still not asserting an anti-assignment provision, and made

18  a payment of $41,982.56.

19     63.     The amount paid was well below what would result in a "reasonable

20  profit" to Medical Provider and well below the UCR amount represented during the

21  separate oral communications between Medical Provider and DEFENDANT.

22

23                          **FIRST CAUSE OF ACTION**

24                   **FOR NEGLIGENT MISREPRESENTATION**

25     64.     Plaintiff incorporates by reference all previous paragraphs as though

26  fully set forth herein.

27     65.     Aetna on behalf of DEFENDANT falsely represented to Medical

28  Provider that payment for services would be based on UCR and not Medicare.

- 11 -
COMPLAINT

66. Aetna on behalf of DEFENDANT knew that any payment made to Medical Provider would not be made the UCR rate and would instead be made at the Medicare rate.

67. Aetna on behalf of DEFENDANT should have known that in making the representations that payment would be made at the UCR and not Medicare rate that Medical Provider would go on to provide the services.

68. Medical Provider then relied on Aetna on behalf of DEFENDANT's misrepresentation and provided the services to Patient. Medical Provider has been damaged in not receiving payment at the represented UCR rate.

69. Medical Provider is owed an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## PROMISSORY ESTOPPEL

70. Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

71. Aetna on behalf of DEFENDANT promised and asserted that the procedures to be performed and which were performed for and on the Patients were covered, authorized, certified and would be paid for at the rate of reasonable and customary and or average billed charges of similarly situated medical providers within similarly situated areas or places of practice, UCR.

72. Medical Provider only decided to provide services because they were assured that payment would be made at the UCR rate not based on Medicare.

73. After assuring and promising Medical Provider that payment would be at the UCR rate, DEFENDANT should have reasonably expected that Medical Provider would then go on to provide medical services expecting that payment would be made at that rate.

- 12 -
COMPLAINT

74. Medical Provider did rely on the statements, assertions and promises of Aetna on behalf of DEFENDANT and provided the medical services to the Patient.

75. As a direct and proximate result of Aetna on behalf of DEFENDANT's misrepresentations, Medical Provider has been damaged in an amount equal to the amount of money Medical Provider should have received had DEFENDANT paid the cost of the procedures at the UCR rate.

76. The detriment suffered by Medical Provider is the amount required to make Medical Provider whole, for the time, cost and money expended in providing medical services to Patient. As a further direct, legal and proximate result of Medical Provider's detrimental reliance on the oral agreement and the misrepresentations of defendants, and each of them, Medical Provider has been damaged due to the loss of monies expended in providing said medical services for which it was significantly underpaid and has suffered damages in the loss of use of the proceeds and income to be derived from the medical services.

77. In light of the material representations and misrepresentations of Aetna on behalf DEFENDANT made to Medical Provider, and of Medical Provider's reliance on the oral agreement, and oral representations made by DEFENDANT and each of them, and based upon Medical Provider's detrimental reliance thereon, DEFENDANT, and each of them, are estopped from denying payment and indemnification for Patient's treatment at the reasonable and customary and or market rate.

78. Medical Provider is owed an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## ENFORCEMENT UNDER 29 U.S.C § 1132 (a)(1)(B) FOR FAILURE TO PAY ERISA PLAN BENEFITS

79. Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

80. This cause of action is alleged by Medical Provider for relief in connection with claims for medical services rendered in connection with healthcare benefits plans administered and/or underwritten by DEFENDANT.

81. Medical Provider seeks to recover benefits and enforce rights to benefits under 29 U.S.C. §1132 (a)(1)(B). Medical Provider has standing to pursue these claims as the assignee of member/patient's rights. As the assignee of rights, Medical Provider is a "beneficiary" entitled to collect benefits and are the "claimant" for purposes of the ERISA statute and regulations. ERISA authorizes actions under 29 U.S.C. § 1132 (a)(1)(B) to be brought directly against DEFENDANT the party with actual control over the benefit and payment determinations with respect to Medical Provider's claims.

82. DEFENDANT is the payor of benefits.

83. By reason of the foregoing, Medical Provider is entitled to recover ERISA benefits due and owing in an amount to be proven at trial, and Plaintiff seeks recovery of such benefits by way of the present action.

///
///
///
///
///
///
///
///
///
///
///

- 14 -
COMPLAINT

## **PRAYER FOR RELIEF**

**WHEREFORE,** Keith Feder, M.D., Inc. prays for judgment against defendants as follows:

1.  For compensatory damages in an amount to be determined, plus statutory interest;

2.  For restitution in an amount to be determined, plus statutory interest;

3.  For a declaration that DEFENDANT is obligated to pay plaintiff all monies owed for services rendered to the Patient;

4.  For attorney fees; and

5.  For such other relief as the Court deems just and appropriate

Dated: November 10, 2025           LAW OFFICE OF JONATHAN A.
                                   STIEGLITZ

                                   By: /s/ Jonathan A. Stieglitz
                                       JONATHAN A. STIEGLITZ
                                       Keith Feder, M.D., Inc.


## **DEMAND FOR JURY TRIAL**

Plaintiff, Keith Feder, M.D., Inc., hereby demands a jury trial as provided by law.

Dated: November 10, 2025           LAW OFFICE OF JONATHAN A.
                                   STIEGLITZ

                                   By: /s/ Jonathan A. Stieglitz
                                       JONATHAN A. STIEGLITZ
                                       Attorneys for Plaintiff,
                                       Keith Feder, M.D., Inc.

- 15 -
COMPLAINT